IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **UNITED STATES OF AMERICA**, ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | |
| ) | No. 11-2107-CM |
| ) | |
| **JAMES C. MONTGOMERY AND** ) | |
| **SAPORA M. TURNER MONTGOMERY,** ) | |
| ) | |
| **Defendants.** ) | |
| ) | |

## MEMORANDUM AND ORDER

This appeal arises from a decision of the Bankruptcy Court for the District of Kansas granting debtors James and Sapora Montgomery's objection to the priority claim of the Internal Revenue Service ("IRS"), and determining the interest rate on the claim. Debtors do not appeal the determination as to the interest rate, but the IRS appeals the decision on priority. This issue on appeal is whether, under 11 U.S.C. § 507(a)(8), the phrase "plus 90 days" applies to each of multiple prior bankruptcy stays, or whether one 90-day extension is added to the total time tolled. For the reasons that follow, the court concludes that the look-back period is only extended for a single 90-day increment. The court therefore affirms the bankruptcy court's decision.

### I.   Factual Background

The relevant underlying facts are not disputed, and are taken from the IRS's brief on appeal and the underlying decision of the bankruptcy court. (Doc. 9 at 7–8) (generally citing Doc. 5 and exhibits thereto); *In re Montgomery*, 446 B.R. 475, 476–77 (Bankr. D. Kan. 2011). Debtors have filed for bankruptcy on four separate occasions in the past eleven years. On November 13, 2000,

Debtors filed a Chapter 13 petition in the Bankruptcy Court for the Western District of Missouri as case number 00-44239 ("First Bankruptcy").  The court dismissed that case on February 25, 2002, after Debtors defaulted on their plan payments.  Debtors filed a second Chapter 13 petition, this time in the Bankruptcy Court for the District of Kansas, on March 28, 2002, as case number 02-21000 ("Second Bankruptcy").  The court dismissed that case on October 1, 2004 because Debtors failed to make required plan payments.  Debtors filed a third Chapter 13 petition, again in the Bankruptcy Court for the District of Kansas, on October 15, 2004, as case number 04-24389 ("Third Bankruptcy").  After the case was converted to Chapter 7, the court entered a discharge order on January 4, 2007.  Debtors filed a fourth Chapter 13 petition, in the Bankruptcy Court for the District of Kansas, on March 24, 2010, as case number 10-20869 ("Fourth Bankruptcy").  The IRS summarizes these four bankruptcies in the following table:

|  | **Case Number** | **Date Filed** | **Disposition** | **Date of Disposition** |
| --- | --- | --- | --- | --- |
| First Bankruptcy (Chapter 13) | 00-44239 (Bankr. W.D. Mo.) | November 13, 2000 | case dismissed | February 25, 2002 |
| Second Bankruptcy (Chapter 13) | 02-21000 (Bankr. D. Kan.) | March 28, 2002 | case dismissed | October 1, 2004 |
| Third Bankruptcy (Chapter 13 converted to Chapter 7) | 04-24389 (Bankr. D. Kan.) | October 15, 2004 | discharge | January 4, 2007 |
| Fourth Bankruptcy (Chapter 13) | 10-20869 (Bankr. D. Kan.) | March 24, 2010 | plan confirmed | February 23, 2011 |

In this most recent bankruptcy, Debtors objected to the IRS's claim with respect to 2001

income tax liability on the ground that it was not entitled to priority under 11 U.S.C. § 507(a)(8). The bankruptcy court sustained Debtors' objection. *Montgomery*, 446 B.R.at 483.

The IRS timely appealed this final order, 28 U.S.C. § 158(a)(1); Fed. R. Bankr. P. 8001–8002, arguing that the bankruptcy court erred by "brushing aside relevant case law and mistakenly emphasizing fresh start principles" (Doc. 9 at 8). The parties have opted to have the appeal heard by this court. *See* 28 U.S.C. § 158(c)(1); B.A.P. 10th Cir. R. 8001-1(a), (e).

The resolution of the question before this court turns on the application of interpretation of "plus 90 days" as used in § 507(a)(8) of the Bankruptcy Code. This section affords eighth priority to IRS claims for tax liabilities if the return was due within three years before the bankruptcy petition was filed. *See* 11 U.S.C. § 507(a)(8); *Young v. United States*, 535 U.S. 43, 46 (2002) (noting this three-year period is referred to as the "three-year look-back period"). This three-year look-back period can be tolled or suspended under certain conditions. For example, the period is suspended when a stay of proceedings is in effect in a prior bankruptcy case. *In re Jones*, 657 F.3d 921, 925–26 (9th Cir. 2011). When such a tolling event occurs, an additional 90-day increment is added to the look-back period. 11 U.S.C.§ 507(a)(8); *see id.* In this case, there is no dispute that the look-back period was suspended during the pendency of Debtors' Second and Third Bankruptcies.

The dispute centers on whether § 507(a)(8) entitles the IRS to a single 90-day add-on to that period, or to two 90-day add-ons. Applying separate 90-day increments to the look-back period for each tolling event—the two intervening bankruptcies—would result in the IRS's claim being entitled to priority in this case. Adding only a single 90-day increment would result in the IRS's claim not being entitled to priority status.[1]

---

[1] As noted by the bankruptcy court, there are at least two methods by which the total look-
(continued...)

## II. Bankruptcy Court Decision

Before the bankruptcy court, as in this appeal, the IRS relied on *In re Abir*, No. 08-70566-478, 2010 WL 421124 (Bankr. E.D.N.Y. Feb. 1, 2010), legislative history, and public policy arguments. Debtors relied on their natural reading of the statute as exemplified in *United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 241 (1989), and also on legislative history.

In its order, the bankruptcy court noted that Congress amended § 507(a)(8) in line with its previously stated public policy to balance three competing interests: those of general creditors, the debtor, and the tax collector. *Montgomery*, 446 B.R. at 480 (citing S. Rep. No. 95–989, 14 (1978), U.S. Code Cong. & Admin. News 1978, p. 5787, reprinted in Vol. D Collier on Bankruptcy App. Pt. 4(e)(i) (15th ed. rev. 2009)). Starting with the textual language of the suspension paragraph and relying on *Ron Pair*, the bankruptcy court held that the punctuation of the phrase "plus 90 days," which is separated from the preceding clause by a comma, indicates that the "plus 90 days" should be added to the three-year look-back period after subtracting the period during which the bankruptcy stay (or stays) was (or were) in effect or collection was precluded by a confirmed plan.

The bankruptcy court distinguished *Abir*, and also noted that

> [t]he addition of one 90-day period for each time a bankruptcy stay goes into effect would punish debtors for repeated filings, thereby interfering with their fresh start. It would conflict with the rule that "'exceptions to discharge are to be narrowly construed' and doubts resolved in the debtor's favor." [citation omitted.] Further, the resulting enhancement of the status of the taxing authority based upon the number of

---

[1] (...continued)
back period can be calculated. *Montgomery*, 446 B.R. at 483–84. For purposes of this appeal, the method of calculation is irrelevant. Under any method, the addition of one 90-day increment versus two is dispositive of the IRS's priority status. Specifically, the IRS argues that it had 1,187 days within which to enforce its claim. (*See* Doc. 9 at 10.) This figure does not exceed three years plus 180 days (1,276 days), thus entitling the IRS to priority. But if only one 90-day extension is applied, even under the IRS's calculations it had 1,277 days within which to enforce its claim, which falls one day outside the look-back period.

> filings would disturb the balance of interests between Debtors, the IRS, and other creditors created by the three-year look-back period.

446 B.R. at 482 (quoting *In re Sweeney*, 341 B.R. 35, 40 (10th Cir. B.A.P. 2006)). The bankruptcy court concluded that, under any calculation method, more than the permitted lookback period had expired before the Fourth Bankruptcy was filed. Therefore, it ruled that the IRS's claim for 2001 income taxes was not entitled to priority status. 446 B.R. at 484.

### III. Standard of Review

On appeal from the bankruptcy court, the district court sits as an appellate court. The standards generally governing review of the bankruptcy court's decision are well-settled: findings of fact are not to be set aside unless clearly erroneous; conclusions of law are reviewed de novo. The bankruptcy court's interpretation of a statute is a question of law. *See In re Overland Park Fin. Corp.*, 236 F. 3d 1246, 1251 (10th Cir. 2001).

### IV. Analysis

In interpreting statutes, a court's primary task is to determine congressional intent, using traditional tools of statutory construction. *St. Charles Inv. Co. v. Comm'r*, 232 F.3d 773, 776 (10th Cir. 2000). The statute's plain language is the starting point. *United States v. Morgan*, 922 F.2d 1495, 1496 (10th Cir. 1991). If the statutory language is clear, the analysis ordinarily ends. *Id*; *see also Edwards v. Valdez*, 789 F.2d 1477, 1481 (10th Cir. 1986) ("It is a well established law of statutory construction that, absent ambiguity or irrational result, the literal language of a statute controls."). If the statute's plain language is ambiguous as to Congressional intent, the court "look[s] to the legislative history and the underlying public policy of the statute." *United States v. LaHue*, 170 F.3d 1026, 1028 (10th Cir. 1999).

In this de novo review, the court looks first to the language of the Code. Specifically, the

unnumbered paragraph following subsection (8)(G) states that

> An otherwise applicable time period specified in this paragraph [*i.e.*, the three-year look-back period] shall be suspended for any period during which a governmental unit is prohibited under applicable nonbankruptcy law from collecting a tax as a result of a request by the debtor for a hearing and an appeal of any collection action taken or proposed against the debtor, plus 90 days; plus any time during which the stay of proceedings was in effect in a prior case under this title or during which collection was precluded by the existence of 1 or more confirmed plans under this title, plus 90 days.

11 U.S.C. § 507(a)(8). This "suspension paragraph" or "hanging paragraph" describes scenarios for tolling the look-back period, one of which is relevant here: "any time during which the stay of proceedings was in effect in a prior [bankruptcy] case." *See Jones*, 657 F.3d at 926.

The question before the court, as before the bankruptcy court, is whether the "plus 90 days" applies to each of multiple prior bankruptcy stays, or whether one 90-day extension is added to the total time tolled.

The IRS points to the "rule of the last antecedent" and its corollary: limiting phrases modify only the noun or phrase they immediately follow, and when a comma precedes the modifying phrase, the modifier relates to more than the last antecedent. According to the IRS, then, the phrase "plus 90 days" applies to each and every tolling event identified in the provision (a debtor's request for a hearing, an appeal of collection activities, the existence of a stay, or when collection is precluded by a confirmed plan). (Doc. 9 at 11–12.)

However, reading the statute in this manner renders the initial "plus 90 days" phrase redundant. The court concludes that a plain reading reveals that Congress intended the look-back period to be suspended for

> [1] any period during which a governmental unit is prohibited under applicable nonbankruptcy law from collecting a tax as a result of a request by the debtor for a hearing and an appeal of any collection action taken or proposed against the debtor, plus 90 days;

-6-

and that the look-back period also be suspended for

> [2] any time during which the stay of proceedings was in effect in a prior case under this title or during which collection was precluded by the existence of 1 or more confirmed plans under this title, plus 90 days.

11 U.S.C. § 507(a)(8).

Only the second suspension scenario is implicated by these facts. Looking at this language, the court is convinced that the phrase "plus 90 days" applies to this scenario as a whole, singularly, regardless of the number of prior cases or plans. It would be an unnatural reading of this language to presume that the phrase "plus 90 days" was meant to be multiplied where multiple prior bankruptcy cases exist.

The IRS's emphasis on the words "any time" and "a prior case" do not demand a different result. The tolling event described, which triggers suspension, is not each "prior case." The tolling event is the time during which enforcement of the claim is stayed. Plus 90 days. In this case, enforcement was stayed during Debtors' Second and Third Bankruptcies. And that period of time, plus 90 days, is added to the look-back period.

**Case Law**

This conclusion is supported by the court's review of the relevant case law. *See In re Tarby*, No. 11-32886/JHW, 2012 WL 1390201, at *2 (Bankr. D. N.J. Apr. 20, 2012) (interpreting the "hanging paragraph" as stating that, "if a governmental unit is enjoined from pursuing collection efforts for any amount of time after the debt becomes due, the look-back period is extended for that length of time, plus 90 days."); *In re Kolve*, 459 B.R. 376, 378–79 (Bankr. W.D. Wis. 2011) (rejecting IRS's reading of the statute which would toll the look-back period for any amount of time there was a stay of proceedings in a prior case, plus 90 days, whether or not that stay had precluded collection by the IRS).

In particular, the IRS's reliance on *In re Abir* is unconvincing. The *Abir* court tolled the look-back period for 90 days based on the debtor's requests for collection due process hearings, and tolled the look-back period for an additional 90 days based on the debtor's two involuntary bankruptcy filings. 2010 WL 421124, at *3. *Abir* does not support the IRS's position that the 90-day increment should be applied for each prior bankruptcy. Rather, that case illustrates the interpretation described above: where two different scenarios or conditions of suspension are implicated, to each of which the language of the statute applies a "plus 90 days."

Similarly unpersuasive is the decision in *In re Acker*, No 09-4165, 2010 WL 3547221 (Bankr. E.D. Tex. Sept. 7, 2010). Although the *Acker* court did toll the look-back period for 90 days for each time the stay was imposed in the debtor's previous bankruptcies, the propriety of that application was not clearly a contested issue before the court, and the decision contained no discussion or rationale for the multiple applications.

**Legislative History, Public Policy Concerns**

To the extent there is any ambiguity in the language of the tolling paragraph, the court notes that the legislature added this paragraph to codify and expand the Supreme Court's ruling in *In re Young*. In that case, the Court held that equitable tolling applied to the look-back period where some obstacle precluded the creditor from acting. *Young*, 535 U.S. at 47; *see Jones*, 657 F.3d at 925–26; *See* Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (BAPCPA), 2005 Pub. L. 109-8, § 705(2); *see also In re Kolve*, 459 B.R. at 380 (suggesting that the provision expands on *Young* by tacking on a uniform 90-day extension).

Equitable tolling is not appropriate where a creditor does not timely take the steps available to preserve its claim and where the creditor faces no prohibition on asserting its claim during the limitations period. *Jones*, 657 F.3d at 929 (citing *Young*, 535 U.S. at 47 (noting that the policies

-8-

underlying statutes of limitations include the elimination of stale claims and a guarantee of certainty for both parties regarding their rights and potential liabilities)).

The bankruptcy court maintains the authority to exercise its equitable powers under certain fact scenarios—particularly involving serial filers—where such equitable relief is specifically requested and is consistent with provisions and policies of the Bankruptcy Code. *See In re Richards*, 994 F.2d 763, 765 (10th Cir. 1993); 11 U.S.C. § 105(a) (giving the bankruptcy courts equitable powers "necessary or appropriate to carry out the provisions of this title"); *see also United States v. Gilmore*, 226 B.R. 567, 573–74 (E. D. Tex. 1998). Congress codified one application of this equitable concept, based on the decision in *Young*, in the suspension paragraph. This provision ensures that the look-back period will be tolled, on equitable grounds, during the time that the government was precluded from enforcing its claim due to a stay in bankruptcy. This court, like the bankruptcy court, can find no explicit reason for Congress's 90-day addition to time otherwise equitably tolled. However, the court concludes that interpreting the statute as broadly as the IRS requests would not serve the stated purposes behind the Code. The decision of the bankruptcy court is affirmed.

**IT IS SO ORDERED**.

Dated this 26th day of June, 2012, at Kansas City, Kansas.

**s/ Carlos Murguia**
**CARLOS MURGUIA**
**United States District Judge**